**Robert Kenneth DEWEY, Plaintiff,**

v.

**REYNOLDS METALS COMPANY,**
**Defendant.**

Civ. A. No. 5889.

United States District Court
W. D. Michigan, S. D.

Nov. 5, 1968.

VanderVeen, Freihofer & Cook, Grand Rapids, Mich., Donald F. Oosterhouse, Grand Rapids, Mich., of counsel, for plaintiff.

Cross, Wrock, Miller & Vieson, Detroit, Mich., William A. Coughlin, Jr., Detroit, Mich., of counsel, Fred R. Edney, Gen. Counsel, Richmond, Va., for defendant.

## OPINION DENYING DEFENDANT'S MOTION TO DISMISS

FOX, District Judge.

This is an action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. which provides, *inter alia*, for relief against religious discrimination in employment.

Plaintiff, Robert Dewey, was employed by defendant from July 14, 1951, until September 12, 1966. Dewey held a number of jobs with defendant; at the time of his termination he was employed as a die repairman. Since 1962, plaintiff has been a member of the Reformed Church, and, consistent with his religious beliefs as a member of that church, he has refused to work on Sundays.

In 1960, a new labor-management agreement was executed between the UAW–AFL–CIO and defendant Reynolds Metals Co. That agreement provided that the company could schedule compulsory overtime work, including Sundays. This provision was carried forward in the 1965 labor-management agreement, which was in effect at the time of the termination which is the basis of this action.

From 1960 until late 1965, the compulsory overtime provision was not exercised and the company functioned on a five-day work week schedule. Late in 1965, the defendant began scheduling Sunday overtime, and in a bulletin dated September 20, 1965, the defendant agreed to allow employees to be relieved of Sunday work if they obtained a qualified replacement.

Dewey was scheduled to work on August 7, 1966, and August 14, 1966, both Sundays. Defendant alleges that, at plaintiff's request, a fellow employee worked as his replacement under the provisions of the bulletin dated September 20, 1965. However, Dewey did not report for work on August 28, 1966, September 4, 1966, or September 11, 1966, all Sundays, having previously made it expressly known to the defendant that it was against his religious beliefs to work on Sundays and that he would not procure a substitute because it was his belief that if it was not right for him to work on Sundays, it would not be right to encourage another to work, regardless of the substitute's religious beliefs. Plaintiff said that the company should obtain a substitute so as to accommodate his religious beliefs.

The September 11 absence resulted in a third written offense and plaintiff was terminated pursuant to Company Rule 11. Believing that he had been discriminatorily discharged because of his religion, plaintiff filed a grievance to this effect, in accordance with the provisions of the 1965 collective bargaining agreement. The grievance was processed through various stages of the grievance procedure and was decided adversely to the plaintiff. An arbitration hearing was held April 27, 1967, and in an opinion and award dated June 29, 1967, arbitrator Mark L. Kahn decided against plaintiff. At the hearing, plaintiff was represented by the union in the persons of the International Representative and the chairman of the bargaining committee. He was not represented by an attorney, although the company was. A post-hearing brief was filed by the company, but no brief was filed by the union.

The arbitrator's decision was based in part on "the fact that a grievance protesting the discharge of Knight [another employee] in August 1966 for refusing Sunday work on religious grounds was later withdrawn [by the union]." (Arbitration award, at 8.)

Another reason given was the finding of the arbitrator that "the agreement does not permit a regular and continuing refusal of all Sunday work on religious grounds." (Arbitration award, at 8.)

Plaintiff thereupon filed a similar charge with the Michigan State Civil Rights Commission. The Commission found that there were insufficient grounds upon which to issue a complaint against defendant.

Plaintiff then filed a charge with the Equal Employment Opportunity Commission alleging that he had been discriminated against because of his religion. The Commission investigated the charge and determined that there was reasonable cause to believe that the employer had violated the provisions of Title VII. The Commission, unsuccessful in its attempts to obtain a conciliation agreement, notified the plaintiff of his right to bring a suit under Section 706 of the Act. This suit was instituted on May 31, 1968, and it is now before the court on a motion filed by defendant to dismiss the complaint on the ground that the plaintiff, by pursuing the grievance procedure under the collective bargaining agreement, had made a final, binding election of remedies and is therefore

precluded from maintaining a suit to enforce his rights under Title VII.

The relevant legal issues easily divide into two: (1) whether by pursuing the grievance procedure to a conclusion, plaintiff made an election of forums which now precludes his suit in this court; (2) whether the constitutional guarantee of freedom of religion permits this court to review the arbitrator's decision or make a decision on the merits. Each of these issues will be discussed in turn.

### I.

Defendant argues that by pursuing his remedy under the grievance procedure, plaintiff made a binding election of forums. Defendant relies on Bowe v. Colgate-Palmolive Co., 272 F.Supp. 332 (S.D.Ind.1967), which granted a motion to dismiss in a case involving a discharge for alleged improper discrimination based on sex. That court said at pages 337–338:

"It is also the belief of the Court that the employee should not be permitted to proceed on the same allegedly wrongful incidents both in the court and pursuant to his contractual remedies."

The reason for this requirement of an election was that "it would be inequitable and unconscionable to subject the defendant Colgate to two series of extensive litigation, one series in this Court and then another series under the labor contract." Id. at 366–367.

The second case relied upon by defendant is Washington v. Aerojet-General Corp., 282 F.Supp. 517 (C.D.Cal. 1968). That case involved a charge of racial discrimination, and the court refused to go as far as the court in Bowe, supra. In Washington, a settlement had been reached between the union and the company prior to arbitration. The court held that once a settlement was accepted by both sides, the employee would be precluded from continuing with any court action under the Civil Rights Act.

Both these cases are distinguishable from the case at bar. The Bowe case dealt with alleged discrimination on the basis of sex, whereas this case deals with a discrimination against the freedom of religion, one of the most cherished and protected constitutional rights. Washington involved a settlement agreed to by both sides, a far different situation than is presented in this case. Both decisions are now on appeal.

In addition to being distinguishable, these cases should be critically analyzed to determine whether their reasoning is valid. The reasoning given by the Bowe court itself argues against the decision in that case:

"The Court finds a fundamental difference between a claim for the violation of a collective bargaining agreement and a claim for the violation of the Civil Rights Act of 1964. The latter is a statutory embodiment of constitutional rights that all persons are entitled to enjoy, while the former has as its primary purpose the maintenance of industrial peace between labor and management. It is the belief of the Court that an employee has the right to come before the court and assert his right under the Civil Rights Act of 1964 without regard to any contractual remedies also available to him." 272 F.Supp. at 337.

The doctrine of election of remedies has traditionally been applied in cases where the same or nearly identical issues were being pursued in two forums. See, e. g., Penn Gen. Cas. Co. v. Commonwealth of Pa. ex rel. Schnader, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935). This doctrine has also been used in the labor field relative to proceedings both before an arbitrator and then before the National Labor Relations Board on the same issue. The standards set forth in Spielberg Mfg. Co., 112 NLRB 1080 (1955), and Raytheon Co., 140 NLRB 883 (1963), are instructive: (1) The factual issues before the arbitrator and the Board must be identical; (2) the hearing and evidence presented must deal adequately with all factual issues; (3) the arbitrator must have decided the factual issues involved before the Board;

(4) the hearing must be fair and regular in all respects; (5) the decision of the arbitrator must be in accordance with the law.

The factor to be emphasized in the instant case is whether the arbitration hearing dealt with the same issues that are present in this proceeding before this court. The issues treated by the arbitrator were wholly different from the issues raised in this Civil Rights Action. The labor contract involved, Article XI, Section 2, Step 5, stated:

> "The arbitrator shall have authority to interpret this agreement for the purpose of settling the grievance, but he shall have no authority to add to or detract from, or change this agreement, or arbitrate wages for new changes, jobs, or production standards."

Under this provision of the contract, the arbitrator correctly limited himself to the contract language. At no time did the arbitrator deal with the issues present in this case, that is, the issues relevant to the Civil Rights Act and the First Amendment.

It is understandable that any union member would first proceed to raise any rights he felt were due him under the contract. Proceeding first through arbitration is in accord with federal labor law. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); United Steelworkers of America AFL–CIO v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Plaintiff should not be penalized for first proceeding with his contractual remedies through the arbitration process, as preferred and indeed mandated by federal labor law. He should retain his rights to also bring a civil rights action. This reasoning is especially justified in this case, where the employee was not represented by counsel at the arbitration hearing, although the company was; and where the union did not file a brief on behalf of the employee though the company filed a brief on its behalf.

Under all these circumstances, the arbitration award should not preclude an action in this court based upon a statute rather than the collective bargaining agreement. To hold otherwise would be to require the employee to have come to this court without attempting a settlement through the contractual processes, as preferred by the national labor law. Plaintiff would also have been required to choose between two different remedies when both remedies are provided to insure that plaintiff's contractual, statutory and constitutional rights are protected. When rights of this type are involved, they outweigh the interest of the company-defendant in avoiding the inconvenience and expense of multiple actions. Thus, a trial should be held on the merits of plaintiff's claim that defendant has violated the Civil Rights Act.

II.

Defendant argues that the First Amendment does not apply to labor contracts or proceedings thereunder, because they are not actions of the government, but are rather purely private activities. Defendant further argues that even if the First Amendment could be said to apply to this situation, the decision of the arbitrator should be final and conclusive with respect to plaintiff's First Amendment rights.

Both defendant's arguments are invalid. First, the arbitration proceeding cannot be viewed as purely a private one. The National Labor Relations Act and the famous Trilogy cases [1] clearly establish a federal labor policy of arbitration as a substitute forum for the public judiciary in which to dispose of industrial disputes.

Since the arbitration tribunal or arbitration proceedings are in many in-

---

1. United Steelworkers of America v. American Mfg. Co. (United Steelworkers of America) Warrior & Gulf Nav. Co. v. Enterprise Wheel & Car Corp., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

stances a substitute for traditional judicial remedies, it follows that the rules of due process and other constitutional protections must extend to the substitute proceedings lest the courts, through approval of arbitration agreements in arbitration proceedings, support proceedings which result in the deprivation of statutory and constitutional rights. If this grievance-arbitration system, which exists as a result of court approval, is permitted to dispose of disputes involving substantial rights without heeding constitutional protections, the courts will find themselves supporting and giving credence to decision which if rendered by the courts would be a violation of the free exercise of religion clause of the First Amendment or of some other essential constitutional protection.

The courts cannot leave to the arbitrator final decisions regarding constitutional rights. This is especially true in the instant case, where the arbitrator was limited to the contract in rendering his decision.

This court is not limited by the contract, but also has before it the Civil Rights Act and the Constitution of the United States. The constitutional issue is not one which can be passed over lightly, as was done by the arbitrator in a sentence or two. The constitutional issue is whether defendant effectively denied plaintiff the right of free exercise of his religion by conditioning plaintiff's right to work on his willingness to forego his religious beliefs or to compromise them by encouraging someone else to work on Sunday. An analogous choice of this type was found to be unconstitutional in Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), where a Seventh Day Adventist was forced to choose between following the precepts of her religion and forfeiting benefits on the one hand, and abandoning one of the precepts of her religion in order to accept work on the other hand.

The court at this time is not expressing an opinion as to the validity of plaintiff's claims. The court is rather refusing to allow a decision by the arbitrator to be the final one with respect to plaintiff's constitutional rights. The right in question, freedom to exercise one's religion, is too precious to require plaintiff to accept an arbitrator's decision regarding it. Again, the guiding principle is that plaintiff should not be penalized and should not be precluded from his rightful statutory and constitutional remedies because he followed the mandated practice under federal law of first submitting his dispute to the private grievance procedure.

For all these reasons the motion to dismiss is denied.