**Robert Kenneth DEWEY, Plaintiff,**

v.

**REYNOLDS METALS CO., Defendant.**

**Civ. A. No. 5889.**

United States District Court
W. D. Michigan, S. D.

June 6, 1969.

VanderVeen, Freihofer & Cook, Grand Rapids, Mich., for plaintiff; Donald F. Oosterhouse, Grand Rapids, Mich., of counsel.

Cross, Wrock, Miller & Vieson, William A. Coughlin, Jr., Detroit, Mich., Fred R. Edney, Asst. Gen. Counsel, Richmond, Va., for defendant.

## OPINION

FOX, District Judge.

This is an action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, which provides, among other things, for relief against religious discrimination in employment. The parties have stipulated to the facts, the most pertinent of which are set forth below.

Plaintiff, Robert Dewey, was employed by defendant at its Wyoming, Michigan, plant on June 14, 1951, and held various jobs until he became a die repairman, which is the job he held at the time of his discharge on September 12, 1966.

Defendant's Wyoming facility is a "job type" plant which produces aluminum extrusions and billets on an order basis. Before 1964 the plant operated on a five-day weekly schedule. Because of increased business, during 1964 and 1965 the plant operated on a "five plus" days weekly schedule. This increased to "six plus" days by 1966, with numerous Sunday work schedules.

Plaintiff was a member in good standing of the U.A.W. Union, Local 277, which represents the production and maintenance employees of defendant's plant.

Before the 1960 Labor Agreement, overtime at the plant was performed on a voluntary basis, and under such circumstances scheduling of production was made impossible on certain overtime days. In 1960, and to the present time, the agreements have included a section giving defendant the right to set overtime schedules and make it compulsory for the employees to work such schedules unless they have a substantial and justifiable reason for not doing so. This section in the 1965 Labor Agreement is Article IX, Section 3:

> "All employees shall be obligated to perform all straight time and overtime work required of them by the COMPANY except when an employee has a substantial and justifiable reason for not working; provided, however, that no employee shall be required to work more than twelve (12) continuous hours without his consent."

The agreement also provides, in Article IX, Section 4, that overtime work shall be divided as equally as possible. If fewer than all qualified employees are needed, the number required is to be scheduled with the overtime chart, and if more employees are needed, they are assigned in the inverse order of their seniority.

In response to a Union objection to the compulsory overtime clause, defendant on September 20, 1965, issued an interpretation of the Labor Agreement which said in effect that any employee assigned to overtime could be relieved from that assignment by arranging for another qualified employee to replace him. This system has been utilized extensively.

Since December of 1961, plaintiff has been a member of the Faith Reformed Church, affiliated with the Reformed Church of America. After joining this church plaintiff never volunteered for Sunday overtime work, although he did volunteer for other days.

Plaintiff was scheduled to work overtime on Sunday, November 21, 1965, pursuant to the compulsory overtime provisions of the Labor Agreement. He refused to work because of his religious beliefs; he was given a verbal warning; and he was advised of the necessity of a seven-day operation and that a repetition of his conduct would lead to a disciplinary action under Plant Rule II. This rule prohibits "absence from work without reasonable cause," and provides a three-offense progression of punishment, with discharge for the third offense.

On the next five Sundays which plaintiff was required to work, between January and August 1966, he instead obtained qualified replacements in the manner described, supra. But on August 28, 1966, when again required to work on Sunday, plaintiff refused to work because of his religious beliefs and refused because of his religious beliefs to obtain a replacement. He told Jake Zagman, a fellow employee who had been serving as his replacement, that he would no longer ask Jake to replace him. Plaintiff was given a written warning of violation of Plant Rule 11.

There is no dispute that these religious beliefs of plaintiff are sincere. These beliefs were expressed by plaintiff to the defendant before the first time he refused to obtain a qualified replacement. Plaintiff honestly believes, as a part of his religion, that he should not work on Sunday, and that he also should not induce anyone else to work on Sunday.

Consequently, on the next Sunday which plaintiff was required to work, September 4, 1966, he refused to work or to obtain a replacement. He was given a written warning and a disciplinary layoff of three days. Plaintiff again refused to work on Sunday, September 11, 1966, and was discharged for violation of Plant Rule 11.

On all the above-mentioned Sundays there were several qualified die repairmen available to work, although defendant states that two of these men could not be compelled to accept such an overtime assignment, since it was outside their job classification.

Before plaintiff's discharge, defendant had taken disciplinary action as to a number of other employees who refused overtime work assignments on Sunday because of their religious beliefs, as well as disciplinary action against employees who refused overtime on days other than Sunday.

Plaintiff filed a grievance upon his discharge, but his grievance was denied at every step of the procedure, including arbitration. The arbitrator considered only the contract, and neither the Civil Rights Act nor the Constitution was before him. Plaintiff then proceeded to the Michigan Civil Rights Commission, which denied his complaint due to insufficient grounds. Plaintiff then filed a charge with the Equal Employment Opportunity Commission, which issued a letter to defendant stating that the Commission had determined that there was reasonable cause to believe that defendant had engaged in unlawful employment practices under Title VII of the Civil Rights Act of 1964.

This action was brought upon failure of conciliation efforts. In November of 1968, this court denied defendant's motion to dismiss, 291 F.Supp. 786.

These are the facts that have been established. Before stating the law and applying it to these facts, it is well to note the facts which have not been brought before the court. There is no evidence that defendant would suffer any hardship should plaintiff prevail in this case. There is no evidence concerning what the effects would be of an accommodation by defendant to the religious beliefs of plaintiff. Could defendant continue to operate on Sunday? Would production be affected? These questions, and others like them, remain unanswered even though the parties have been given ample opportunity to present evidence concerning facts which were not possible to stipulate.

Because an application of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, will permit the court to decide the case, it is not necessary to reach the question of whether plaintiff's constitutional rights have been violated.

Section 703(a) (1) of the Act, 42 U.S.C. § 2000e–2(a) (1), provides:

"It shall be an unlawful employment practice for an employer—

(1) to * * * discharge any individual * * * because of such individual's * * * religion * * *."

The Act makes exception to this rule only in those instances where religion is a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e–2(e). That exception has not been alleged, and clearly does not apply to the manufacture of aluminum extrusions.

To further the purposes of the Act, the Equal Employment Opportunity Commission was formed. 42 U.S.C. § 2000e–4. The Commission was given power not only to aid the enforcement of the Act, but also to promulgate regulations consistent with the provisions and purposes of the Act. 42 U.S.C. § 2000e–12(a). Regulation Section 1605.1 is directly applicable to this case:

"Section 1605.1 Observance of Sabbath and other religious holidays.—(a) Several complaints filed with the Commission have raised the question whether it is discrimination on account of religion to discharge or refuse to hire employees who regularly observe Friday evening and Saturday, or some other day of the week, as the Sabbath or who observe certain special religious holidays during the year and, as a consequence, do not work on such days.

"(b) The Commission believes that the duty not to discriminate on religious grounds, required by section 703(a) (1) of the Civil Rights Act of 1964, includes an obligation on the part of the employer to make reasonable accommodations to the religious needs of employees and prospective employees where such accommodations can be made without undue hardship on the conduct of the employer's business. Such undue hardship, for example, may exist where the employee's needed work cannot be performed by another employee of substantially similar qualifications during the period of absence of the Sabbath observer.

"(c) Because of the particularly sensitive nature of discharging or refusing to hire an employee or applicant on account of his religious beliefs, the employer has the burden of proving that an undue hardship renders the required accommodations to the religious needs of the employee unreasonable.

"(d) The Commission will review each case on an individual basis in an effort to seek an equitable application of these guidelines to the variety of situations which arise due to the varied religious practices of the American people."

■ Great weight should be given to this regulation, as the Supreme Court emphasized in Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965):

When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." Unemployment Comm'n [of Territory of Alaska] v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 [145]. See also e. g., Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; Uni-

versal Battery Co. v. United States, 281 U.S. 580, 583, 50 S.Ct. 422, 74 L.Ed. 1051 [1054].

"Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new.'" Power Reactor Co. v. International Union of Electri[cal, etc.], 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 [932].

In considering the law to be applied, the effect of the labor-management agreement must be determined. The agreement prescribes a certain procedure for assignment of overtime and for disciplinary discharge. If the procedures provided are lawful, defendant would prevail. If they are unlawful, the fact that it is a labor-management agreement will not validate the procedures. An agreement which violates a provision of the federal constitution or of a constitutional federal statute, or which cannot be performed without violating such a provision, is illegal and void. Ewert v. Bluejacket, 259 U.S. 129, 138, 42 S.Ct. 442, 66 L.Ed. 858 (1922); Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679 (1902); 17 Am.Jur. 2d, Contracts § 165 (1964).

The issue is thus not changed by the existence of a contract. If the procedures used are discriminatory, the plaintiff is entitled to relief, notwithstanding the fact that the contract authorized the procedures.

In applying the law to the facts in this case, we are concerned with the answer to one question: is the enforcement, by discharge, of compulsory overtime on Sunday discriminatory when, solely for religious reasons, the person discharged refuses to work on Sunday or to obtain a qualified replacement?

The defendant argues that discrimination requires a rule which applies differently to different groups, and that the compulsory overtime provision applies equally to all employees. This argument is invalid, because it is entirely possible that while a rule may apply equally to all employees, it does not have an equal impact on them. The court should look beyond the fact of the rule to determine whether it is discriminatory. See, in another context, Ranjel v. City of Lansing, 293 F.Supp. 301 (W.D.Mich.1968).

Rules having uniform application but a discriminatory effect against an individual's religion have been struck down before. Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), is probably the leading case in this regard. In Sherbert the plaintiff was denied unemployment compensation benefits because she refused to work on Saturday because of her religion, and was therefore "unavailable for work." The law applied equally to all, but its impact was discriminatory as to Seventh Day Adventists, such as the plaintiff. In rejecting an argument similar to that made by the defendant in this case that the rule applies equally to all, the Supreme Court, through Mr. Justice Brennan, stated at pp. 403 and 404, 83 S.Ct. at p. 1794:

"In a sense the consequences of such a disqualification to religious principles and practices may be only an indirect result of welfare legislation within the State's general competence to enact; it is true that no criminal sanctions directly compel appellant to work a six-day week. But this is only the beginning, not the end, of our inquiry. For '[i]f the purpose or *effect* of a law *is to impede the observance of one or all religions* or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect.' Braunfeld v. Brown, 366 U.S. 599, 607 [81 S.Ct. 1144, 6 L.Ed.2d 563]. Here not only is it apparent that appellant's declared ineligibility for benefits derives solely from the practice of her religion, *but the pressure upon her to forgo that practice is unmistakable.*" (Emphasis supplied.)

The facts of Sherbert are similar to a recent Michigan case, Swenson v. Michigan Employment Security Commission, 340 Mich. 430, 65 N.W.2d 709 (1954). Again a provision which was applied equally had a significant impact only on Seventh Day Adventists. The application of the provision was therefore struck down.

A final example of the fallacy of defendant's argument is West Virginia State Bd. of Ed. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). All school children in West Virginia were required to salute the flag, a rule which on its face is not discriminatory. But saluting the flag was forbidden by the religious beliefs of some of the students. The Supreme Court declared such a rule to be unconstitutional.

In each of these cases, as in the case at bar, the uniform application of a rule or requirement was struck down because its effect, its impact, was discriminatory.

The compulsory overtime rule of defendant, coupled with the option to obtain a qualified replacement, is not discriminatory on its face, but this is only the first step. Is the rule discriminatory in its impact? To answer the question it must first be determined what "discriminatory" means. Two definitions in the religious context are suggested, one by Sherbert v. Verner, supra, and one by the Equal Employment Opportunity Commission guidelines, also discussed supra. The standards suggested by these definitions will be applied to the case at bar.

In relation to Sherbert, one might question its relevance, since in that case there was "state action," while in the instant case there is only private action. That distinction would be important if this opinion were dealing with whether defendant's overtime rule is unconstitutional. But the issue before the court is whether the defendant has violated a federal statute—a statute which restricts the activities of private employers and does not require "state action." The importance of Sherbert to this analysis is not its holding on constitutionality, but its definition of discrimination—a definition which is equally valid whether employed to measure private or state action.

The religious discrimination in Sherbert is succinctly defined at 374 U.S. 404, 83 S.Ct. 1794:

"The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion, in order to accept work, on the other hand."

Thus, a rule which forces a person to choose between his religion and compensation benefits is penalizing him solely because of his religion.

Applied to this case, plaintiff has been forced to choose between his religion and his job. Such a choice limits plaintiff's free exercise of his religion, and is thereby discriminatory in its effect. Applying the principles of Sherbert, the rule of defendant should not be enforced against plaintiff.

It is not necessary to rest the decision entirely on the Sherbert doctrine, however. The guidelines of the Equal Employment Opportunity Commission make it very clear what duties vis-a-vis religious beliefs are imposed upon any employer. Those guidelines are a very reasonable interpretation of the statute, and are hereby adopted as defining the requirement of the statute that an employer not discriminate on the basis of religion.

The test set forth is a twofold one: (1) the employer must make reasonable accommodations to the religious needs of its employees; (2) unless such accommodation will cause undue hardship on the conduct of the employer's business.

The evidence does not establish that a reasonable accommodation to plaintiff's religious beliefs was made by defendant. When considering plaintiff's beliefs, it must be remembered that a

fundamental part of them was that plaintiff could not ask anyone else to work on Sunday, because that would be as much a sin as working himself on Sunday. There is no dispute as to the sincerity of this belief.

Requiring the employee to obtain a qualified replacement may be some accommodation to those who do not approve of Sunday work, but it is no accommodation whatsoever to those who believe, as plaintiff does, that it is a sin to induce another to commit the sin of working on Sunday. As to this sincere religious belief of plaintiff, defendant has made no accommodation.

Moving to the second half of the Equal Employment Opportunity Commission test, the defendant has not demonstrated any undue hardship. As stated earlier, full opportunity was given for any and all relevant facts to be presented. Yet the only factor tending to show hardship was that ten years ago there was some difficulty scheduling production on Sunday. This is not the type of hardship envisioned by the guidelines:

"Such undue hardship, for example, may exist where the employee's needed work cannot be performed by another employee of substantially similar qualification during the period of absence of the Sabbath observer."

Dewey's case is just the opposite. There were always several available employees who could perform his work.

The other facts cited to show hardship by defendant are not part of the stipulated facts, and are not properly before the court.

Defendant alludes to the possibility that this exception would open the door to other exceptions not based on religion. This is pure speculation which is not supported by logic. Sherbert, supra, 374

U.S. at 407, 83 S.Ct. 1790. Other exceptions are not authorized, indeed mandated, by federal law. There is no reason why an accommodation cannot be made relative to religious beliefs, and limited thereto.

Thus plaintiff prevails under both definitions of discrimination. The overtime procedures of defendant, as applied, violated the Civil Rights Act of 1964.

■ The fashioning of a remedy presents a serious problem, because a reasonable accommodation is better worked out by agreement of the parties than by fiat of the court. For this reason, the only affirmative relief which will be awarded at this time is that plaintiff be returned to work, with back pay from August 1, 1967.[1]

As to further accommodations which should be made in accordance with this opinion, the parties are asked to reach a solution acceptable to all concerned. Such a solution might include the defendant's obtaining qualified substitutes or a shared overtime type of arrangement whereby the people who could not work Sundays would work overtime on other days of the week.

These are merely suggestions. The parties know which types of accommodations are best suited to their particular needs. It is also suggested that the union be a party to negotiations concerning an acceptable change in the contract, so that the contract will conform to the law.

The court expressly retains jurisdiction of the case, to review agreements reached by the parties pursuant to this opinion, or to issue whatever orders are necessary to insure that the religion of defendant's employees is properly respected and fairly accommodated.

It is so ordered.

1. The guidelines became effective July 10, 1967. Before then defendant was not on notice as to the meaning of the statute. But in a reasonable time after the effective date an accommodation should have been worked out. August 1, 1967 is such a time.