**Joan RUDOLPH, Appellant,**

v.

**WAGNER ELECTRIC CORPORATION,
Appellee.**

**No. 78–1193.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1978.

Decided Nov. 8, 1978.
Rehearing and Rehearing En Banc
Denied Dec. 5, 1978.

Hanson, Senior District Judge, sitting by designation, filed concurring opinion.

Lisa S. Van Amburg, Anderson, Everett, Sedey & Van Amburg, St. Louis, Mo., for appellant.

Michael J. Tannler, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., argued, for appellee; D. J. Sullivan and Timothy L. Stalnaker, St. Louis, Mo., on brief.

Before HEANEY and STEPHENSON, Circuit Judges, and HANSON,* Senior District Judge.

STEPHENSON, Circuit Judge.

Appellant Joan Rudolph brought a Title VII sex discrimination claim, Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000e et seq., against appellee Wagner Electric Corporation. Upon Wagner's motion, the district court[1] granted summary judgment, dismissing the complaint upon the ground that it failed to meet the time limitation jurisdictional prerequisite of 42 U.S.C. § 2000e–5(e). Rudolph appeals, alleging her claim was timely filed. We affirm the district court.

Rudolph was dismissed from her job with Wagner in February 1973 for "insufficient productivity." Pursuant to the labor contract entered into between Wagner and Local 1104, International Union of Electric, Radio and Machine Workers, AFL–CIO, of which Rudolph was a member, she filed a union grievance in February 1973 protesting that there was not "cause" for discharge as required by the labor contract. The resolution of the dispute was submitted to arbitration in December 1973 and on April 22, 1974, the arbitrator upheld Rudolph's dismissal on the basis of insufficient productivity. On May 15, 1974, Rudolph filed a charge against Wagner with the Equal Employment Opportunity Commission (EEOC), alleging sex discrimination by Wagner. On January 10, 1977, Rudolph received her right to sue letter from the EEOC and on March 28, 1977, she filed suit in district court, alleging that Wagner violated various provisions of Title VII, including failure to remedy the effects of all the discriminatory practices alleged. The district court dismissed Rudolph's action for her failure to file her charge within 180 days of her discharge as required by 42 U.S.C. § 2000e–5(e): "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred * * *."

Rudolph claims on appeal that the arbitrator's decision, issued pursuant to the contractual labor agreement, upholding the discharge, is the "occurrence" for purposes of section 2000e–5(e), and thus her claim was filed within 180 days of the occurrence. This argument has implicitly been rejected by this court,[2] and has specifically been rejected by the Supreme Court in *International Union of Electrical Workers, Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 234–35, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976).

Rudolph alleges her fact situation can be distinguished from *Electrical Workers* primarily because Rudolph considered the arbitration decision to be the final disposition, and thus the "occurrence," and she did not

---

* The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

2. *See Greene v. Carter Carburetor Co.,* 532 F.2d 125, 126 (8th Cir. 1976); *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1234 (8th Cir. 1975).

consider the February 1973 discharge as final. However, this claim amounts to no more than the bare assertion raised by plaintiffs in *Electrical Workers*. There the Court stated:

> Throughout the proceedings both in the District Court and in the Court of Appeals, both sides appear to have assumed, as did the courts, that the date of discharge was October 25, 1971 [herein February 1973]. There being no indication that either party viewed the October 25 [herein February 1973] discharge as anything other than "final," there is certainly no reason for us to now torture this mutual understanding by accepting the bare assertions to the contrary raised by petitioners for the first time before this Court.

*Id.* at 235, 97 S.Ct. at 446 (footnotes omitted).

■ The Supreme Court did state that the parties may have a contractual understanding that confirmation from higher management of a recommendation for discharge would be considered as the relevant statutory "occurrence," but that is clearly not the case here.[3] It was understood by Rudolph that she was fired. The labor agreement only provided for a contractual appeal route. It did not render her discharge provisional.[4] Rudolph was dismissed from her employment in February 1973, and that was the occurrence for purposes of the Title VII limitations period.

3. The only possible distinction between this case and *Electrical Workers* is that in *Electrical Workers* the appellants failed to raise this argument in the court of appeals, and raised it for the first time before the Supreme Court. *See International Union of Electrical Workers, Local 790 v. Robbins & Myers, Inc., supra*, 429 U.S. at 235 n.7, 97 S.Ct. 441. However, there still exists no more than "bare assertions" in this case.

4. Indeed, the labor contract between Wagner and the union of which Rudolph was a member considered an employee to be "reinstated" if the employee prevailed in the grievance procedure. Agreement between Wagner and union for the period of April 6, 1970, to April 1, 1973, Art. 3, paragraph 8.

5. In *Chevron Oil Co. v. Huson, supra*, 404 U.S. at 106–07, 92 S.Ct. at 355, the Court stated:

■ Rudolph also makes the allegation that Wagner failed to remedy the discharge during the grievance and arbitration process. This "continuing violation" claim is without merit, as it is simply a restatement of Rudolph's allegation that the February 1973 discharge was not the occurrence for Title VII purposes. "Termination of employment either through discharge or resignation is not a 'continuing' violation. It puts at rest the employment discrimination because the individual is no longer an employee." *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1234 (8th Cir. 1975).

Rudolph's second claim on appeal is that even if the February 1973 discharge was the occurrence for purposes of Title VII, pursuing her grievance in accord with the labor contract tolled the time period for filing with the EEOC. Rudolph argues that *Electrical Workers*, which held to the contrary, should not be applied retroactively to her case.

■ The standards to be considered in regard to retroactivity were articulated by the Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The major factors are whether the court ruling in question was of first impression or "clearly foreshadowed," whether the retroactivity will further or retard the purpose of the rule, and whether inequities will result by retroactive application of the rule.[5]

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." * * * Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." [Citations omitted.]

Although the discussion in *Electrical Workers* is not articulated as a discussion of the *Chevron* standards, the Supreme Court considers the substance of each of the *Chevron* standards in reaching its decision. Initially the Court notes: "We think that petitioners' arguments for tolling the statutory period for filing a claim with the EEOC during the pendency of grievance or arbitration procedures under the collective-bargaining contract are virtually foreclosed by our decisions in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, [94 S.Ct. 1011, 39 L.Ed.2d 147] (1974), and in *Johnson v. Railway Express Agency*, 421 U.S. 454, [95 S.Ct. 1716, 44 L.Ed.2d 295] (1975)." *International Union of Electrical Workers, Local 790 v. Robbins & Myers, Inc., supra*, 429 U.S. at 236, 97 S.Ct. at 446. Although we recognize that these cases occurred after Rudolph's 180 day period for filing with the EEOC had expired, the basis on which this foreshadowing exists is still applicable. The Court in *Electrical Workers* points out that the legislative history of Title VII is quite clear in revealing the congressional intent to "supplement, rather than supplant" existing remedies for employment discrimination. *Id.* at 236, n.8, 97 S.Ct. 441. The Court's ruling in *Electrical Workers* was not a surprise.

At the time of Rudolph's discharge, several courts had dealt directly with the tolling issue herein, and had indicated that the grievance procedure tolls the Title VII filing period.[6] The primary case holding this was *Culpepper v. Reynolds Metals Co.*, 421 F.2d 888 (5th Cir. 1970). However, the only cases Rudolph cites that have occurred in courts within this circuit and upon which

her attorney might have relied in deciding that the grievance system would toll the limitations period, are *Richard v. McDonnell Douglas Corp.*, 469 F.2d 1249 (8th Cir. 1972), and *Lowry v. Whitaker Cable Corp.*, 348 F.Supp. 202 (W.D.Mo.1972), *aff'd*, 472 F.2d 1210 (8th Cir. 1973). Both of these decisions dealt with the question of whether initially filing a complaint with the EEOC served to toll the running of the statutory time period while state proceedings were utilized. This is a sufficiently different issue; it does not provide the "clear past precedent" that *Chevron* mentions.

At the time of Rudolph's discharge, the most Rudolph can claim is that she did not know from existing precedent in this circuit whether the grievance procedure would toll the time period for filing with the EEOC.

Even more importantly, under the facts of this case, is the fact that even when one considers the *Culpepper* line of cases, none of the cases Rudolph relies upon contain language that would have led her to believe that she was prevented from filing her sex discrimination claim with the EEOC. She does not allege that she was under this impression at the time of her discharge.[7] The *Electrical Workers* Court also discusses this fact in its opinion:

In no way is this a situation in which a party has "been prevented from asserting" his or her rights, *Burnett v. New York Central R. Co.*, 380 U.S. [424], at 429 [85 S.Ct. 1050, 13 L.Ed.2d 941]. There is no assertion that [plaintiff] was "prevented" from filing a charge with the EEOC within [the statutory time period]; indeed, it is conceded and even urged that

---

6. *Moore v. Sunbeam Corp.*, 459 F.2d 811, 826–27 (7th Cir. 1972); *Malone v. North American Rockwell Corp.*, 457 F.2d 779, 781 (9th Cir. 1972); *Hutchings v. United States Indus., Inc.*, 428 F.2d 303, 308-09 (5th Cir. 1970); *Culpepper v. Reynolds Metals Co.*, 421 F.2d 888, 891–92 (5th Cir. 1970). *See Dewey v. Reynolds Metals Co.*, 291 F.Supp. 786, 789 (W.D.Mich. 1969). *See also Dewey v. Reynolds Metals Co.*, 300 F.Supp. 709 (W.D.Mich.1969), *rev'd and remanded, reh. denied*, 429 F.2d 324 (6th Cir. 1970), *aff'd per curiam by an equally divided court*, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971).

7. Rudolph cites *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), as authority upon which her attorney might have relied in believing that she was required to pursue her contract remedies prior to going into federal court. However, the legislative history of Title VII, as discussed in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47–60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), negates the applicability of the general rule (as discussed in *Republic Steel*) of using the contract grievance procedure prior to resort to federal court. *Republic Steel Corp. v. Maddox, supra*, 379 U.S. at 652–53, 85 S.Ct. 614.

she could have filed it the following day, had she so wished.

*International Union of Electrical Workers, Local 790 v. Robbins & Myers, supra,* 429 U.S. at 237 n.10, 97 S.Ct. at 447. *See generally id.* at 237–38, 97 S.Ct. 441.

There were no cases that instructed Rudolph not to file her EEOC complaint at that time, and no cases within this circuit indicating that the grievance system tolls the EEOC time period for filing.

The second part of the *Chevron* test is deciding whether retroactive application of *Electrical Workers* will further or retard the purpose of the rule announced in *Electrical Workers.* For example, in *Chevron,* the case in question included the ruling that state law rather than admiralty law applied in an action on a personal injury occurring on a fixed structure on the Outer Continental Shelf. "A primary purpose underlying the absorption of state law as federal law," stated the *Chevron* Court, "was to aid injured employees by affording them comprehensive and familiar remedies." *Chevron Oil Co. v. Huson, supra,* 404 U.S. at 107–08, 92 S.Ct. at 356. Because retroactive application of the rule would have imposed a state statute of limitations and consequently deprived the plaintiff of any remedy, retroactive application would not have furthered the purpose of the new rule.

In this case, the Supreme Court held that the grievance procedure will not toll the Title VII limitations filing period. The purpose of the Electrical Workers decision is to further the legislative intent of the Act: "[T]he contractual rights under a collective-bargaining agreement and the statutory right provided by Congress under Title VII 'have legally independent origins and are equally available to the aggrieved employee[.]' " *International Union of Electrical Workers, Local 790 v. Robbins & Myers, Inc., supra,* 429 U.S. at 236, 97 S.Ct. at 447, *quoting from Alexander v. Gardner-Denver Co., supra,* 415 U.S. at 52, 94 S.Ct. 1011: " 'Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.' " *Id.* 429 U.S. at 236 n.8, 97 S.Ct.

at 447, *quoting from Alexander v. Gardner-Denver Co., supra,* 415 U.S. at 48–49, 94 S.Ct. 1011. Thus retroactive application is not inconsistent with the purpose of the *Electrical Workers'* rule.

This, of course, leads us to the third of the *Chevron* standards—the equities involved.

The most obvious inequity with which Rudolph would be left, should this court give retroactive effect to *Electrical Workers,* is that she would not be able to pursue her sex discrimination claim under Title VII. This is admittedly contrary to the liberal and broad interpretation meant to be given remedial legislation such as Title VII. This same type of inequity resulted in *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), inasmuch as plaintiff therein was barred from filing a section 1981 claim when the Court ruled that filing with the EEOC did not toll the 1981 limitations period. There the Supreme Court stated:

> We note expressly how little is at stake here. We are not really concerned with the broad question whether these respondents can be compelled to conform their practices to the nationally mandated policy of equal employment opportunity. If the respondents, or any of them, presently are actually engaged in such conduct, there necessarily will be claimants who are in a position now either to file a charge under Title VII or to sue under § 1981. The question in this case is only whether this particular petitioner has waited so long that he has forfeited his right to assert his § 1981 claim in federal court.

*Id.* at 467 n.13, 95 S.Ct. at 1723.

The *Johnson* language applies to this situation also. We are simply determining whether Rudolph waited too long before filing her Title VII claim. Our decision will deprive her of her Title VII remedy. Yet she did elect to pursue her contractual remedy—a remedy distinct from Title VII provisions—apparently at which time her dis-

crimination claims were considered.[8] As we have already pointed out, Rudolph was never prevented from timely filing her EEOC charge. She chose to await the outcome of her contractual remedy before filing her Title VII claim. We endorsed the rationale of the *Culpepper v. Reynolds Metals Co.,* supra, court in *Richard v. McDonnell Douglas Corp.,* 469 F.2d 1249 (8th Cir. 1972), in that time limitations "[are] meant to penalize only those who sleep on their rights and remedies, not one who actively attempts to settle his complaint by following the 'rules of the shop.'" *Id.* at 1252 n.10, *quoting from Culpepper v. Reynolds Metals Co.,* supra, 421 F.2d at 892. But even though Rudolph followed the rules of the shop in pursuing her contractual remedy, this does not provide a sufficient justification for her "failure to take the minimal steps necessary to preserve each claim independently." *Johnson v. Railway Express Agency, Inc.,* supra, 421 U.S. at 466, 95 S.Ct. at 1723.

■ By not applying the *Electrical Workers* rule retroactively we would also defeat the purpose of the limitations period, which is to give notice to the employer. Even though Wagner acknowledges that Rudolph raised the sex discrimination charges in the grievance procedure, this did not give notice that she planned to pursue her complaint in a Title VII statutory claim. The grievance procedure is an independent remedy; a sex discrimination argument raised in a grievance procedure is not tantamount to the notice required by the Title VII period of limitations.

■ There is obviously some inequity inherent in whatever choice we make. However, the inequity of leaving Rudolph unable to pursue her Title VII remedy is not so great when one considers that she was never prevented from filing her claim in a timely fashion with the EEOC. Thus, we find the *Chevron* standards to be better

served by applying the *Electrical Workers* rule retroactively.

We affirm the district court.

HANSON, Senior District Judge, concurring.

I concur in Judge Stephenson's analysis as it relates to when the alleged unlawful employment practice "occurred" within the meaning of the statute. My purpose in concurring separately is to stress that in rejecting Rudolph's other argument that *International Union of Electrical Workers, Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), should be applied nonretroactively (or prospectively only), I have felt compelled to follow inferences gained from the rationale employed by the Supreme Court in *Electrical Workers,* and have not predicated my conclusion on an independent review of the standards articulated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

Though the Supreme Court was not faced with the retroactivity question in *Electrical Workers,* I think the clear implication in the language and reasoning used by the Supreme Court in concluding that pursuit of a contractual grievance procedure does not toll Title VII time limitations suggests that its holding should be given retroactive effect. The Supreme Court's stress on the clarity of legislative history indicating that Title VII was "designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination," *Electrical Workers,* supra 429 U.S. at 236 n.8, 97 S.Ct. at 447, *quoting Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and its observation that *Alexander,* supra, and *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), "virtually foreclosed" any argument in favor of tolling indicates to me that the

---

8. The record discloses that Wagner's response to Rudolph's complaint stated "the same issue of alleged sex discrimination presented herein was raised and considered in the arbitration proceedings; * * * this Plaintiff was represented in those proceedings by her union bar-

gaining agent and also by her own retained attorney; * * * the arbitration proceedings were conducted with a high degree of procedural fairness before a distinguished and respected arbitrator having special competence in discrimination cases * * *."

Supreme Court would be likely to resolve the first and second components of the *Chevron* test against Rudolph. As Judge Stephenson notes, "[a]lthough the discussion in *Electrical Workers* is not articulated as a discussion of the *Chevron* standards, the Supreme Court considers the substance of each of the *Chevron* standards in reaching its decision." Op. at 93, *supra*.

Only because I feel bound by what I can infer from the parallelism between the *Electrical Workers* opinion and the *Chevron* standards do I concur in the conclusion that the holding in *Electrical Workers* should be applied retroactively.