**Ramon J. RIOS**

v.

**REYNOLDS METALS COMPANY.**

Civ. A. No. 70–C–195.

United States District Court,
S. D. Texas,
Corpus Christi Division.

July 6, 1971.

James De Anda, Corpus Christi, Tex., for plaintiff.

Wm. H. Keys, Corpus Christi, Tex., for defendant.

### ORDER

OWEN D. COX, District Judge.

Plaintiff, a Mexican-American, brought suit in this Court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., claiming he was discriminated against because Defendant (employer) maintains a policy of not employing Mexican-Americans as pipe fitters. Defendant has moved for summary judgment.

Plaintiff was promoted about March 24, 1969, to the position of maintenance mechanic pipe fitter, but was later demoted to his prior position. Pursuant to the provisions of a collective-bargaining agreement between Defendant and Aluminum Worker's International Union, Local 235, which was made, of course, for the benefit of all employees, Plaintiff filed a grievance in which he complained of being demoted without being given a reasonable trial period as required under said agreement, and asked that he be reinstated as a pipe fitter and reimbursed for lost pay. Such a complaint, which involves the question of ability and/or qualification, is, pursuant to said agreement, to be decided by recourse to the grievance procedure. Plaintiff unsuccessfully pursued his complaint through all steps of the procedure, including arbitration. In his personal appearance before the arbitrator, and in response to a question by the union official representing him, Plaintiff gave as one of the reasons for lack of a fair trial period and his demotion, his birth, that is, he is a Mexican-American. The evidence as to how well he did the work of a pipe fitter was also before the arbitrator. However, Plaintiff had filed his complaint in this Court on October 6, 1970, which was before the arbitration hearing on October 13, 1970. The arbitrator's decision made on or about December 4, 1970, denied Plaintiff's grievance and his requested relief.

Apparently, the arbitrator did not buy Plaintiff's claim of discrimination, and determined that he had been treated fairly during the trial period, but could not do the work of a pipe fitter. The same evidence regarding the same issues will have to be presented if this case is tried on its merits to this Court, because certainly no final decision of job discrimination should be made until the Plaintiff establishes that he can do the job he seeks to hold. If Plaintiff was, because of discrimination against him, prevented from proving he could do the job to which he had been promoted, then he would certainly have a valid complaint. But, it is inconceivable to this Court that anyone could require his employer to promote him to a job he is not qualified to fill because of past discrimination against him or other

members of his particular group. Defendant, in its motion, contends that Plaintiff, having elected to submit to arbitration, should be bound by it.

In Hutchings v. United States Industries, Inc., 428 F.2d 303, 309 (5 Cir. 1970), the issue of whether an employee is precluded from maintaining such an action " . . . because he first utilized the Plant's grievance-arbitration machinery to prosecute his rights under the collective bargaining agreement governing the conditions of his employment by the Company" was before the Court. On two different occasions, Plaintiff had invoked the procedures provided under the collective-bargaining agreement then in effect. The first time he abandoned the procedures before arbitration, but the second time he followed the procedures through to the arbitrator's decision. In each case, the decision was against Plaintiff. He then filed with EEOC. The trial court granted Defendant's motion for summary judgment, holding in part that Plaintiff could not pursue a Title VII remedy since his grievances had already been determined against him in the grievance-arbitration machinery provided for in the collective-bargaining agreement available to him. The Fifth Circuit held that the invocation of grievance-arbitration machinery did not have the effect of barring Plaintiff from bringing suit under Title VII in Federal Court, and remanded the case for a trial on the issue of whether Plaintiff had been the victim of a Title VII violation.

This Court is mindful of the position on election of remedies set forth in Bowe v. Colgate-Palmolive Company, 416 F.2d 711 (7 Cir., 1969). An employee is not barred from bringing proceedings simultaneously via the arbitration route and the courthouse. The Court of Appeals said, "* * * it was error not to permit the plaintiffs to utilize dual or parallel prosecution both in court and through arbitration so long as election of remedy was made after adjudication so as to preclude duplicate relief which would result in unjust enrichment or windfall to the plaintiffs." This case recognizes that, at some point, the complainant must either fish or cut bait.

The Fifth Circuit, moreover, has on numerous occasions expressed a liberal posture toward the maintenance of Title VII actions. Jenkins v. United Gas Corporation, 400 F.2d 28 (5 Cir., 1968); Beverly v. Lone Star Lead Const. Corp., 437 F.2d 1136 (5 Cir., 1971). In *Beverly,* for example, the Court stated at page 1139, that, subject to the requirement that Plaintiff must exhaust administrative remedies before the EEOC, "It is our interpretation of Title VII that there exists an absolute right in each complainant to bring a civil action in federal court." but this Court does not read that to say any such suit may be maintained and pursued to a final judgment at any cost.

Considering the language of the Fifth Circuit in the *Beverly* case and its holding in *Hutchings,* and the Sixth Circuit's position in the case of Dewey v. Reynolds Metals Company, 429 F.2d 324 (6 Cir., 1970), it seems these two circuits are not in complete agreement on the question here. The Court of Appeals for the Sixth Circuit was confronted with a claim of discrimination against the Plaintiff, who because of his religious beliefs, would not work on Sunday, nor would he take advantage of the replacement provisions whereby he could arrange for someone to work in his place. The trial court had denied the motion of Defendant to dismiss the complaint. The Court of Appeals reversed and decided that, even though arbitration and a court action may be maintained at the same time, a suit may not be brought *after* the grievance has been finally adjudicated by arbitration, and the trial court was directed to dismiss the complaint. In its original opinion and on petition for rehearing, the Court discussed in some detail the effect of final arbitration of grievances on subsequent litigation of the same complaints under Title VII and points out that, if the arbitrator had held against the com-

pany, it would have been precluded from relitigation. The Sixth Circuit's holding in *Dewey* was affirmed by a divided United States Supreme Court on June 1, 1971, 402 U.S. 689, 91 S.Ct. 2186, 29 L. Ed.2d 267. Such action seems to place considerable limitation on the prior holdings of the Fifth Circuit.

The *Dewey* case refers to Boys Markets, Inc., v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L. Ed.2d 199, in which the Supreme Court clearly enunciated the policy of the United States Congress to encourage collective bargaining. In overruling Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), the Supreme Court went into considerable detail as to how the holding there undermined the effectiveness of the arbitration techniques as a method peacefully to resolve industrial disputes. We recognize that the Supreme Court, in both cases, was concerned with union-management controversies, but there is no logical reason to turn away from that policy already well established and to discourage the use of arbitration between the employee and employer. The Fifth Circuit, in *Hutchings*, recognizes such a policy in noting

" * * * it is clear that Congress placed great emphasis upon private settlement and the elimination of unfair practices without litigation * * * on the ground that voluntary compliance is preferable to court action" 428 F.2d at 309.

This language certainly does not limit the emphasis solely to union-management controversies.

Certainly, the Federal Courts should be diligent in protecting and providing appropriate relief for any person who is actually discriminated against because of race, color, creed, national origin or sex. But, to permit the aggrieved employee claiming discrimination to proceed with his suit in Federal Court under Title VII after an arbitration award has been made must create an exercise in frustration for those charged with the grievance-arbitration machinery, for they are being told at the outset, at least inferentially, the aggrieved employee will not abide by their actions unless the result suits him. There is little to justify such a situation, unless, of course, courts want to permit the employee claiming discrimination, at the conclusion of the Federal Court trial, to accept the prior arbitrator's award if it happens to be more favorable than the Federal Court's ruling. However, this would foster a bias in favor of the aggrieved employee, which Congress surely did not intend.

In the instant case, the suit was filed obviously after arbitration proceedings were commenced and immediately before the hearing, and summons was served, but both parties proceeded with the arbitration and a full hearing was held before the arbitrator. The issue of discrimination was raised there; so, there should be no doubt that Plaintiff Rios was, and knew he was, a beneficiary of Title VII relief. After the arbitrator's denial of Plaintiff's claim, the suit was still pending. Plaintiff was ready to try again for relief. But, Defendant filed its motion for summary judgment. Now, we must decide should Plaintiff be entitled to a new chance for relief? This Court believes that the rule announced in *Dewey* should be followed here, even though Plaintiff Rios commenced this suit before the arbitration hearing was held. He had the benefit of a full hearing and a final arbitrator's decision. The calculated planning in filing this suit immediately before rather than immediately after the arbitration hearing and award should not destroy the applicability of *Dewey*. Defendant's motion for summary judgment should be granted.

However, this Court does consider it proper to refer to footnote 10 on page 314 of the *Hutchings* case. The issue of discretionary deference to arbitration decisions in certain cases was not clearly resolved by the Fifth Circuit. But, that Court noted that, "The record in this case does not reveal whether Title VII

rights, or similar contractual rights, were ever considered during the processing of Hutchings' grievances." In the instant case, the arbitrator decided, for all practical purposes, the same issues as will be before this Court on the trial of this case. The arbitration decided, " * * * whether the Grievant * * * was given a fair trial period and judged on the basis of his work rather than on * * * grounds which might be judged either capricious or discriminatory." So, it would seem that this may be the future when, "the question whether a procedure similar to that applied by the Labor Board in deferring to arbitration awards when certain standards are met might properly be adopted in Title VII cases." Id., and if such is the case, would relief by way of summary judgment be proper, if the record supports it? To enforce deferment might be approached from a different basis, but, it seems to this Court, the result would be the same.

In any event, the motion of Defendant for summary judgment is granted and judgment is hereby rendered for the Defendant. This is a final order. Clerk will notify counsel.