James **SPANN**, Plaintiff-Appellant,

v.

**KAYWOOD DIVISION, JOANNA WESTERN MILLS COMPANY, Inc.,** Defendant-Appellee.

No. 20859.

United States Court of Appeals, Sixth Circuit.

Aug. 13, 1971.

---

2. We assume, an appellant claims, that she had no adequate chance to object before.

Justin Brocato, Kalamazoo, Mich., for plaintiff-appellant.

George P. Blake, Chicago, Ill., for defendant-appellee; John J. Cassidy, Jr., Floyd G. Hoffman, Chicago, Ill., Henry W. Gleiss, Benton Harbor, Mich., on brief; Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Globensky, Gleis, Sandee, Henderson & Bittner, Benton Harbor, Mich., of counsel.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Having obtained and accepted an arbitration award reinstating him in his position as a drill man in appellee's plant, James Spann now seeks to have this court order an additional remedy which the arbitrator denied: back pay. We decline to do so, believing that Spann's post-arbitration filing of his complaint with the Equal Employment Opportunity Commission, and ultimately this court, which occurred only after the entire decision of the arbitrator had been rendered, fits within the holding of this court in Dewey v. Reynolds Metal Co., 429 F.2d 324 (6th Cir. 1970) (aff'd by an equally divided court, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (June 1, 1971)), which bars recourse to the federal courts.

Spann, a Negro, was employed by appellee Joanna Western Mills Co. in 1966, when he was discharged for having written notes to two white women co-workers, asking each for a date. The existence of the first of these notes became known to the company only because the union steward then on duty, who saw the recipient tear it up, picked it up from the trash receptacle, glued it back together, and took it to the union president, who thereupon went to the personnel manager. The second note, written the same day (Friday), but brought to the company's attention the following Monday, was reported by the recipient herself. Upon learning of this second note, the personnel manager, who had warned Spann after the first note had been discovered not to write any more such notes, fired him on the spot, over

the protest of the union vice-president. The latter objected not to some penalty, but only to the severity of the discharge.

Through the union, Spann then processed his grievance according to the established contract procedure, which called for arbitration. After a full hearing on the matter, the arbitrator found that the notes had caused some discontent in the plant, and that the company was justified in taking some action against Spann. Nevertheless, the arbitrator acquiesced in the union's contention that the penalty was too severe, and awarded Spann reinstatement. As to Spann's claim for back pay, based primarily on the allegation that the discharge was due to racial discrimination, however, the arbitrator declared that "While the race element was an important factor in the instant series of events, it is pure conjecture to hold that the same results might not have occurred if the grievant were white. * * *." As previously noted, back pay was disallowed and that disallowance provides the sole issue presented here.

Following that decision, Spann filed a complaint with the Michigan Civil Rights Commission, which later dismissed the complaint, finding that "the issue of racial discrimination was taken up and found not proven. * * * The issue * * * was decided after a full and fair hearing by an independent third party." Spann then sought relief from the Equal Opportunity Employment Commission, which, on August 11, 1969, issued a "reasonable cause" letter authorizing suit, which Spann then filed in the lower court. That court dismissed, and Spann perfected this appeal.

At stake here is a very narrow question: whether an employee who seeks neither court nor administrative assistance in processing a grievance allegedly based on racial discrimination until after an arbitrator has rendered a generally favorable decision, which the employee accepts, may then seek from the courts or administrative agencies charged with determining the presence of such discrimination the relief denied by the arbitrator.

That issue was before this court in Dewey,[1] and we held, both on hearing, and on a petition for rehearing, that pursuit of arbitration, without some simultaneous use of court or agency processes, precluded judicial jurisdiction to later review the arbitrator's decision. Dewey v. Reynolds Metal Co., supra, 429 F.2d 331–332, 336–337. This was totally consistent with and protective of the general policy that arbitrators' decisions are to be deemed final, and not subject to judicial review. Boys Market, Inc. v. Retail Clerk's Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Spann attempts to avoid Dewey in several ways. First, he argues that Dewey cannot apply where the arbitration proceeding is a sham, and then asserts that it was so here, because the union failed to vigorously pursue the racial question. He attempts to bolster this suggestion by pointing to the fact that it was the union steward and president, who together first brought the incidents to the attention of the company, after the recipient of the note had torn it up. This ignores, however, the fact that the union officers actively sought to alter the discharge decision at the precise moment it was made, and thereafter pursued the arbitration procedure with vitality, winning Spann's reinstatement. Thus, even if we were to accept Spann's proffered exception to Dewey, the facts of this case would not fit it.

Nor do the cases of Glover v. St. Louis-San Francisco Ry. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), and Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), support Spann's contention that he was never

---

1. Dewey's case was in fact stronger, since the arbitrator had held against him, and he had been afforded no remedy before he came to court.

obliged to seek settlement in arbitration. While there is language in both cases suggesting that, in some instances, arbitration remedies need not be pursued, the cases are distinguishable on readily apparent grounds. In *Glover,* the employee had already attempted to use those remedies, and had found them lacking, and the Court, consistent with voluminous case law,[2] held only that such remedies need not be exhausted when they were obviously futile. In *Vaca,* the employee alleged that the union had wrongfully refused to pursue the administrative remedies, and the Court held that there was no duty to exhaust where there was no method of exhausting. Here, on the other hand, the record is clear that the union began protecting Spann's rights even before discharge, and fought, successfully, for those rights in the arbitration proceeding.

Spann next seeks to avoid *Dewey* by arguing that his acceptance of the arbitration award does not preclude him from pursuing his judicial remedy as well. We find it unnecessary to pass on that point, since Spann did not seek to follow these paths simultaneously, but rather sought four separate bites of the apple: (1) arbitration; (2) the Michigan Civil Rights Commission; (3) the EEOC; (4) the judiciary. This "successive monogamy" of remedies is forbidden by *Dewey.*[3]

■ Finally, Spann argues that under the contract, the arbitrator had no jurisdiction to decide the issue of racial discrimination and, therefore he has not "really" pursued his remedies on that point. This attempt to finesse *Dewey* fails. While an arbitrator's decision is, of course, not binding on issues not properly within his jurisdiction, United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), we conclude that the provision in the agreement that "Equal pay must be paid for. equal work and equal privileges must be granted regardless of race, creed, (or) color. * * * " gave the arbitrator power to decide this issue. Clearly both parties to the arbitration itself believed this to be the case, and it lies strangely in the mouth of Spann, who first berates the union for not pressing that issue strongly enough in arbitration, to now suggest that the arbitrator had no power over that issue. We find no merit in this contention.

■ This case falls squarely within the reasoning and facts of *Dewey,* and we intimate no opinion on cases falling without the scope of that decision. We hold only that where all issues are presented to bona fide arbitration and no other refuge is sought until that arbitration is totally complete, *Dewey* precludes judicial cognizance of the complaint.

Affirmed.

EDWARDS, Circuit Judge, concurred in the result.

2. Walker v. Southern Ry. Co., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966). The cases are collected in K. Davis, Administrative Law Treatise, sec. 20.07 (1958) (1965 Supp.) and (1970 Supp.).

3. The Supreme Court's holding in U.S. Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971), that a seaman has an option of judicial or arbitration relief in seeking past due wages, would seem to indicate that successive suits are to be frowned upon. In-

deed, the four dissenters in *Bulk Carriers* proposed that the seaman be required to go to arbitration, at the very least as a prelude to any court suit, and strongly implied that there would be a strong presumption favoring his resolution of the issues. See also Edwards and Kaplan, "Religious Discrimination and the Role of Arbitration Under Title VII," 69 Mich.L.Rev. 599, 651 (1971), wherein criteria are listed which would seem to support our disposition of this case.